19-3797, Quintus Talley against Major Clark et al. May it please the court, my name is Craig Casillia, I'm with Decker LLP, and I'd like to introduce Julie Hahn, who's admitted to practice under Local Rule 46.3. She's a recent graduate from Penn Law, and she'll present argument with the court's permission on behalf of Appellate as amicus curiae. Thank you very much, Mr. Casillia. We welcome you, Ms. Hahn. I'll bet you're studying for the bar now, too, right? May it please the court. Good morning, Your Honor. My name is Julie Hahn, on behalf of court-appointed amicus curiae. I would like to reserve three minutes for rebuttal. Granted. If I may, I would like to begin with the scope of our appointment and the answer to your question. So the issue in front of us is whether Pennsylvania prisoners previously impeded from filing a grievance must seek extensions if the impediment is resolved for the purpose of exhausting administrative remedies. The answer in the abstract is yes, but I don't think it is a complete answer in light of Mr. Talley's pro se status and the fact that the case was dismissed on the Child v. Six motion. So generally, courts within the Third Circuit have held that a prisoner must follow through every step that's set forth in the policy in the prison-driven system. Extension is part of the process. And in fact, in a district court case, Jordan v. Bertolini, the district court gave DC-ADM 804, the current policy at issue, a very careful interpretation. The district court held that the policy allows extension and the prisoner could have filed extension but failed to do so after regaining access to his paperwork. Therefore, he failed to exhaust. However, there are other cases that point to a different direction because unavailability concerns are present. In Du Bois v. Woot, the prisoner similarly did not file a grievance, did not file extension either. In his complaint, he included allegations such as the prisoner officers told him if they even thought about filing grievances, they would handcuff him. Right, so that's a great point. The case law indicates that the prisoner does not have to attempt to exhaust if the prisoner is laboring under a threat. Yes, Your Honor. It's sort of the sword of Damocles that if you file this grievance or you continue with your grievances, bad things will happen to you, right? Yes. Okay, but I don't see anything in the record here where Mr. Talley has pleaded that. He certainly pleaded fear and threats of sexual assault from fellow inmates. But I didn't see anything in the record along the lines that maps onto the case law that you just accurately described. Your Honor, that is correct. Mr. Talley did not plead anything on the exhaustion front that he was threatened. But as we can see, Mr. Talley is a pro se litigant, so based on the Supreme Court ruling. But he also knows the prison system very well in terms of the grievance policies. He was in the suicide watch for what, a month and three days, is that correct? For five weeks from January 6th to February 9th. And then at the very least, would he not have been required to file a grievance within 15 days after February 9th? If I may, I would like to submit that Mr. Talley was not afforded any form of notice or opportunity to. Even after February 9th? Sorry, Your Honor. Even after February 9th? So after February 9th, he was, based on the record, he was transferred to another SCI facility in Fayette. But I, actually from the record, I don't know when that happened. He said he didn't have access to, you know, pen and paper type of thing and a form, and he couldn't do that. But my question is, once he got out and he did have that access, should he not, under policy 804, have filed that grievance at that time? So I have two responses for you, Your Honor. The first thing is, I actually do not know what happened after he was transferred, so I don't know if there is any other confinement that he was subjected to. And the second point is, exhaustion is an affirmative defense. So Mr. Talley did include lack of utensils. And that goes with the complaint, which was silent. So you can't, you don't have the requirement to anticipate what an affirmative defense would be. But then later there was a motion to dismiss, and he never responded to the claim that he did not exhaust. So at that point, isn't he out of cards? Yes, Your Honor. As to the non-response to the motion to dismiss, I would like to point out that the district court did not give him notice or opportunities in accordance with our courts holding in Palladino. And, in fact, in Palladino, the courts make it really clear that the district courts have discretion as to how the forum or the opportunities are presented. But it is a must to present them some form of notice. And in this case, based on our review, the district court did not do so. And, in fact, the district court included in their Final Five that they would treat the non-response as, well, be mindful of Mr. Talley's pro se complaint, they wouldn't treat the non-response as uncontested. But, however, the case was dismissed with prejudice, so there wouldn't be any future motions. But he still didn't respond to the motion to dismiss. I mean, this person knows the system pretty well, and he did not respond. Is that correct? I don't think so, Your Honor. Did he respond? What did he respond to the point that he did not exhaust? He only included that in his pleading, which is he didn't have access to a writing utensil or materials. I'm glad you mentioned that because I want to go back a little earlier than what Judge Amber was asking you about. In Supplemental Appendix 15, the complaint contains a section that's labeled exhaustion of administrative remedies. I don't know if you have that handy there. Yes. Okay. So here's what I'm thinking, and maybe you can help me with this. Because we all agree that exhaustion is an affirmative defense, Mr. Talley had no obligation to plead exhaustion. Yes. But he did talk about exhaustion in this section that I'm referencing. And what he wrote in Section 5 of the complaint is following his January 6, 2018, suicide attempt, plaintiff was committed. This is Paragraph 61 of the complaint. Yes. Plaintiff was committed to the POC first at SCI Graterford, then SCI Fayette, where he didn't get approved to possess either paper grievances and or a writing utensil until February 9, 2018. Yes, Your Honor. So what he's pleaded isn't that, first of all, he wasn't silent about exhaustion. And he didn't plead, I couldn't exhaust because they were threatening me. He pleaded, I couldn't exhaust because I didn't have any pen and paper. Right? That's correct. So if that's what he pleaded, back to Judge Ambrose's point, once he did have pen and paper after February 9, doesn't the 15-day clock start ticking on February 10? So I guess there are two layers that I would respond to your question. Yes, if there is no intimidation present and based on the sole argument, lack of writing utensils or materials, it wouldn't be a winning argument because filing for extension is necessary. But in the present case, in his complaint, there are a lot of other, you know, allegations that point to very serious threat of retaliatory nature, including indifference to his life, threatened rape by another fellow inmate. But the point here is that if he was worried, he was saying it was unavailable, he didn't have pen and pencil. He then did, on February 9, just file for an extension if he's really worried about the folks there. And again, if they denied him an extension, that would constitute exhaustion because it would be unreasonable to deny someone who didn't have access to pen and paper the chance to file agreements. But, Your Honor, this case was dismissed at the pleading stage. And the pleading was the only document that's in the record that can allude to the fact of what was rendered unavailable. And if I may say, based on my review of this court's case, very rarely the exhaustion is decided at the pleading stage because it's not a pleading requirement for the plaintiff. And based on Palladino, because of the express requirement of this court, there must be some form of notice. And Mr. Talley did not get a notice. So I may assume that he was not on notice of the legal significance of non-opposition. And Mr. Talley is a prose plaintiff with mental illness. Why shouldn't we just sort of apply the most logical explanation to what's going on here? Mr. Talley is a very experienced litigant, albeit pro se, but to Judge Ambrose's point, tremendous experience with the system, the litigation system. Isn't what he's doing here is trying to make an argument, a credible argument, that people who are put in the restricted housing unit, people, inmates who are deprived of writing utensils, don't have to exhaust? Isn't that really the argument here that he's trying to make? I know that you have different obligations. You have an ethical obligation to the court. Yes. As an attorney in waiting, that he doesn't have. So, but he's filed many, many things in this case. And what I read him to be saying is people like me that are put into this form of confinement, deprived of writing utensils, don't have to exhaust. What am I missing? I think my first point would be Mr. Talley is experienced, but that's not what's present in the record. And based on the record, he did provide one argument. He didn't have to. It is not a winning argument, but he never had to present that argument on the pleading stage because that's not his responsibility. And after the defendant actually. We're going beyond that. You're right. He did not have to. He could be silent in his complaint. But two points. One, he knew what the grievance system was. He knew that if you didn't need to comply or you couldn't comply right away, you could ask for an extension. And in the complaint, he indicated at least indirectly that here's the reason I didn't comply. It's because the grievance was unavailable. So he seemed to know it. But then just to seal the deal, the defense files a motion to dismiss. And he doesn't respond to the claim that he did not exhaust. So whether you have a problem at the beginning. When he on February 9, whether you have a problem in connection with what he acknowledged indirectly in his complaint, or whether you have a problem with him not responding to the motion to dismiss, he's got a problem. Well, Your Honor, so Mr. Talley is a pro se litigant. And if I may say, he did point out one possibility, but he never said that that's the only reason he didn't file a grievance. And also for a pro se litigant, a complaint can be dismissed at a motion to dismiss for failure to stay a claim stage, if and only if there's no set of facts that can support his claim. And based on his complaint, I can see very serious allegation of threat. And that shares a lot of factual similarities, you know, with Rinaldi. You're right about the threats, but I'm not sure that you've been able to connect the threats to the failure to exhaust. And I think the reason we cannot see that because Mr. Talley was not granted an opportunity to further develop this argument. And because he's a pro se. Why couldn't he have pleaded it? I mean, he pleaded a lot of things in his complaint. Why couldn't he have pleaded that connection between the threats and his inability to exhaust? I think he certainly could have if he was aware of this exception. But it's not a pleading requirement on him. It's a requirement on the defendant. And after defendant's motions to dismiss, he was never granted a chance or was not on notice to respond or to maybe bring in other arguments. And just based on the record in front of us, there are a lot of just unanswered questions because we don't know whether what he claimed was true, and we don't know how serious the threat was. And we don't know, based on the objective prong under Rinaldi, that if an inmate of a reasonable fortitude would feel the same way. What I'm trying to say is Mr. Talley's complaint tells us a really plausible and concerning story, that the real reason that he was deterred from following agreements was intimidation. And also, just if I may direct your honors to page 4 of the appendix. It's page 2 of his complaint, paragraph 5. So he actually also pleaded that across the state of Pennsylvania, it is a theme that the prison officers care very little about inmates with mental illness. So just based on this and based on the serious nature of what he has alleged, I think that this report, based on his posted status, should look at other facts and should not dismiss this case before giving him notice and opportunity and especially should not dismiss this case with prejudice, because now he's barred from raising this remedy ever. And just back to my point that there should be more factual developments, and I wouldn't think that it would be too heavy or too burdensome on the district court, because that's actually the more consistent practice that the district court have, because of the notice and opportunity requirement. And most of the exhaustion rulings are actually resolved at the motion of summary judgment stage or at a motion to dismiss stage after some sort of fact findings. So that's why we think that in this case, Mr. Talley was not granted full opportunities to develop the intimidation argument. And if he was granted, there is a very plausible inference that it could satisfy the two protests under Rinaldi, and it could give him another opportunity to further develop this. Thank you. You'll have an extra minute on rebuttal should you choose to use it. Thank you very much, Ms. Han. We've missed Tesoro listed first, but I think Ms. Neal is going to go first. That's fine. No problem. Thank you. Good morning. I believe it's still morning, and may it please the court. My name is Cassidy Neal, and I am counsel for appellee Dr. Doyle. The district court's dismissal of Talley's complaint for failure to exhaust should be affirmed as to all defendants, because he failed to comply with the Prison Litigation Reform Act and the Pennsylvania Department of Corrections' grievance policy. As just discussed, this court appointed amicus counsel to address the question of whether or not Talley was required to seek an extension of time to file his grievance. Did he have to allege that in his complaint, that he didn't ask for an extension? That he didn't ask for an extension? I don't believe he had to plead anything in his complaint, but Mr. Talley was quite clear about what he did and didn't do. Is it possible that this probably should have been resolved at summary judgment because at the motion to dismiss, you put in that there were, here were his grievance records, and they do not show any grievance filed for this particular matter. Wouldn't that, in effect, change a motion to dismiss into a motion for summary judgment? It could, unless it's clear from the face of the complaint that the complaint can be dismissed under 12b-6, and I think that's exactly what happened here. Mr. Talley was very clear that he didn't exhaust his administrative remedies. But it would seem to be more of a forfeiture because he didn't respond to the motion to dismiss as opposed to, here are the grievance records which don't show that he ever filed a grievance, therefore he didn't exhaust. Correct. In addition to pleading that he didn't exhaust, giving an explanation as to why he didn't exhaust, then failing to respond to the motion to dismiss, alleging that he failed to exhaust administrative remedies, the court had no choice but to determine that based on the complaint, based on the arguments set forth by defense, there's no indication that Mr. Talley exhausted his administrative remedies. He was required to seek an extension of time because he clearly admits that he had access to grievances following February 9th, 2018. He explains that the reason he was unable to exhaust is because he was in psychiatry commitment during that period of time and didn't have access to pen or grievance. The court properly dismissed the claim based on what was included in the face of the complaint. The court focused on the complaint, not on your response. That's correct. And I think that was probably smart because I'm not sure your response would satisfy for a couple reasons. First of all, it's hard to prove a negative. I think that's why it's rare that these get resolved in a motion to dismiss, right? Correct. To prove that someone didn't exhaust, what are you going to say? We have nothing or, you know. But you have another potential problem here, which is after he was transferred to Fayette, I don't remember there being any evidence in the record. And also, you don't really have original documents, as I recall. You've got an affidavit, right? Well, Judge Hardiman, if I may, the motion to dismiss was actually filed on behalf of the co-defendants. My client, Dr. Doyle, is in an unusual position here. Well, yeah, I'm forgetting. That's probably why I should have had Ms. Tesora up here first. But your client's case is weird because he wasn't even served. Correct. He hadn't been served. Until after the case was decided. What are we supposed to do with that? Was it proper to dismiss the case as to Dr. Doyle? It was. Whenever the record made very clear, the record in the complaint and the filing submitted by the defendants in this case, that there was no exhaustion. That defense applies to all of the defendants. There's no reason why the district court couldn't determine that the entire case should be dismissed. But how do you adjudicate a case against somebody who's not yet a party to the case? Based on reviewing the complaint, determining that the plaintiff didn't comply with what he's required to do before initiating the lawsuit, and then determining that the defense is available to all of the defendants in the case. Had I waited or had I had- Except all of the defendants in the case. Doyle's not yet in the case because he hadn't been served. I think maybe the argument, and I don't know if this is a winner, but maybe the argument is the district court did not have jurisdiction over Dr. Doyle at the time it made its ruling because Dr. Doyle had not yet been served. But now that Dr. Doyle has been served, perhaps this court has jurisdiction over Dr. Doyle. That's perhaps with a large question mark at the end of it. In the event this case were to be remanded to the district court for Dr. Doyle to assert the same defense as the co-defendants have already asserted- It's a formality. The same outcome would occur. It's a formality. Correct, Your Honor. But we usually do focus on formalities, particularly when it comes to jurisdictional matters. Right. Is there any case law to tell us whether- Let's assume for a minute, and feel free to tell me I'm wrong on this, but if the district court didn't have jurisdiction over Doyle at the time it made its ruling because he had not yet become a party to the case for want of service, is there any case law, first of all, to indicate that I'm wrong about that? Not that I'm aware of. Okay. Is there any case law to support the notion that an appellate court like this one can have or will have jurisdiction over somebody who became a party to a case after the district court made its ruling? I think it's important here, perhaps for this analysis, you're going to have to help me with the timeline, but I think Doyle was served before the notice of appeal was filed? That's correct. Okay. Because the case was still in the district court at the time Doyle was served, does that mean that we somehow got jurisdiction over this guy even though the district court didn't have jurisdiction at the time it issued its ruling? Sounds like a federal court's exam question, doesn't it? It certainly does, Your Honor, and I apologize for not having the answer, but I would be happy to submit a supplemental brief in the event there is some case law- All right, but you're not aware of any cases that will help us with this? Not on that specific point. Is that an issue that you happened to focus on or research? I don't recall. It wasn't an issue that I focused on here because our position- Your view is simply Doyle is similarly situated to all the other folks. Correct. And although the court cannot sua sponte dismiss a complaint for failure to- I'm sorry, for failure to exhaust administrative remedies, the court in the McPherson case distinguished the Ray case, which held that a plaintiff- I'm sorry, which held that a court could not sua sponte dismiss a complaint for failure to exhaust administrative remedies, and it indicated that even an affirmative defense such as statute of limitations in that case, if it's clear from the face of the complaint, the case can be dismissed. Here, the Department of Corrections filed the motion. The court examined the motion and the face of the complaint and made a determination that Talley had not exhausted, and accordingly, the affirmative defense, which is applicable to all of the defendants here, should be in place. Do you also want to argue that he failed to state a claim against Doyle? I could, Your Honor. There's multiple additional bases on which plaintiff failed to state a claim, but I did not raise that argument in the district court level because I did not file a motion to dismiss. So the focus on this argument, I believe, has to be on the failure to exhaust administrative remedies because that is why the court dismissed. Well, we can affirm for any reason supported by the record, though. It doesn't matter that you argued it or not. Right? Yes. If you'll just give me one moment, Your Honor, and I can find the answer to that. In addition to failing to state a claim to exhaust administrative remedies, Talley failed to state a claim against Dr. Doyle under several bases. One of his allegations against Dr. Doyle was based on medical malpractices. Dr. Doyle is a licensed psychiatrist, and he has failed to file a certificate of merit, which is necessary in order to state a claim against a defendant under medical malpractice under Pennsylvania state law and the certificate of merit requirement. Talley also pled an ADA claim against Dr. Doyle, which is not applicable to an individual. A Title II ADA claim has to be filed against an entity, a public entity, not an individual, so that, as a matter of law, is not an applicable claim against Dr. Doyle and should be dismissed. Further, Talley has pled an Eighth Amendment deliberate indifference claim against Dr. Doyle, under which he failed to state an appropriate claim. He is alleging that he failed to, sorry, that Dr. Doyle failed to adjust his decision-making in discharging Talley or in failing to discharge Talley from the psychiatric observation cell. This is a question of medical judgment, not a question of deliberate indifference. There's no question that Dr. Doyle provided Talley with psychiatric care, assessed him, addressed his needs. Talley is just frustrated with the outcome of the care that he received and not happy with the decisions made by Dr. Doyle. Accordingly, he is not raising an Eighth Amendment claim. He's raising a medical malpractice action, which, again, is a state law cause of action, which is required to be supported by a certificate of merit. Talley, of course, includes a Fourteenth Amendment due process claim, which I would suggest, Your Honors, is duplicative of his Eighth Amendment claim and should be dismissed on that basis. And I believe he also included a conspiracy claim against Dr. Doyle. There's quite a bit included in the complaint from a legal standpoint, but not so much on a factual standpoint. Talley's conspiracy claims are simply not supported by the factual allegations included in the complaint against Dr. Doyle, and he can't proceed with that claim. He has to plead allegations that are supported by facts, bearing out the existence of the conspiracy, indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. But here Talley only includes conclusory allegations against Dr. Doyle, which are not sufficient to plead such a claim against him. So should Your Honors determine that the exhaustion remedy is not available to Dr. Doyle at this time because of his unusual procedural status, there are several other reasons upon which this case should be dismissed against Dr. Doyle. Talley failed to state a claim against him. He failed to exhaust administrative remedies. He waived any of the arguments that amicus counsel raised in their brief and brought up today, and he shouldn't be permitted to proceed with this case. He failed to respond to the motion to dismiss filed by co-defendants, and that was his opportunity to raise the arguments that amicus counsel raised today. Thank you very much, Ms. Doyle. You're welcome. I apologize for going over my time again. No worries. That was in response to my question. I appreciate it. Ms. Tesoro? Yep. Mr. Tesoro, could I burden you with trying to help us with the jurisdictional issue? Do you have any thoughts on what I was asking Ms. Neal about her client? You've been representing the state in these cases many times. Do you have any case law to cite or any thoughts on the matter? You're referring to the jurisdictional issue because her client's motion to dismiss came later. That he hadn't been served yet. He hadn't been served yet. What comes to me off the top of my head, and I don't know if this helps too much, but I think the power of the courts, probably district and appellate, in prisoner cases with the Prisoner Litigation Reform Act entails an ability to screen cases and dismiss them on almost nothing if on the face of the complaint there is no legal basis for it. In this particular case, the record showed the DOC defendants, I'll call them, substantive motion to dismiss as opposed to any exhaustion issue, which raised a variety of issues. And they were not reached by the court, but those defects that were pointed out, and I think Ms. Neal rattled off a good list of them, would justify, in effect, dismissing the case at the first opportunity, which is what seems to have happened here, even though the sequence was a little bit atypical. Okay. Thank you very much. Sorry to butt in with that, but I wanted to get your thoughts on that before you started. Certainly quite all right. I couldn't help but pay heed early in the argument when the court made the point, which is pretty obvious to most of us, that Mr. Talley is a very experienced and very knowledgeable litigator who has probably done a lot more competent legal work than some lawyers who appear in this form. And that being so, I think we have to take him at his word. In this case, the court actually got counsel involved to discuss whether Talley had to seek an extension or not, and we haven't spent too much time on that, although I think the unanimous conclusion on both sides is yes, he did. I think that he didn't personally seek an extension for his own purposes when he got out of court. That he didn't seek an extension would be, from your perspective, an affirmative defense, right? In other words, he didn't exhaust. Right, and that's what the whole ballgame here is that he didn't exhaust. And to complain, it's up to you to say in affirmative defense that he didn't exhaust. That's true, but what he did say in his complaint was, I didn't exhaust, and I, parenthesis, I know that's normally what's expected and required, because I didn't have a pen. And that explicit assertion on his part is, I think, fatal to his case. He pleaded himself out of exhaustion. Yeah. But if he hadn't said anything about exhaustion, then this case would have had to go forward to the summary judgment phase, correct? Probably so. It would be different if he hadn't said that, but he did say it. You would then raise the affirmative defense of exhaustion, and there would be some factual discovery required as to whether he did exhaust or not. Perhaps so, but that's not. What he's pleaded here is that I don't have to exhaust, and I didn't exhaust, because I didn't have the ability to file a grievance while I was in the POC, right? That's effectively yes, but he also, when he got out, he was transferred, admittedly. I don't think that really changed anything. And he spent basically a year not saying a word about this case because it wasn't moving forward. He didn't file the complaint that he might possibly have envisioned way back when until a year after he left Graterford. But from your standpoint, I assume the policy issue that's important to the BOP is that under 804, unlike Delaware where we had the other case where it was sort of, well, you could get a verbal excuse potentially, here in 804 it specifically says if it is determined that a delay was caused by a circumstance listed above, a reasonable extension of time for filing shall be permitted. So the BOP is obliged to give people extensions if they can show good cause for missing the deadline, right? Exactly. If I may respectfully correct you, it's DOC. Excuse me. But anyway. Thank you. It is the DOC's written policy. And in fact, when you appointed counsel to assist Mr. Talley, the focus was going to be on whether if there's an impediment that he claimed there was, there's a need for the inmate to request an extension of time when he is no longer burdened by that impediment. You can see that if it's true that if he pleads, and we accept this true, that he was denied writing implements, that he would have been entitled to have the clock begin on February 10th rather than when he first went in. I think that's entirely reasonable. I mean, he's correct that part of the whole nature of the POC is that the people who are in there don't have writing implements and other harmful stuff at their disposal. Once he got out and was transferred to a different institution in a different setting, that was not a problem anymore. But he didn't do anything about this case at that time. It was another bunch of months before he filed the complaint for better or worse. I do want to just, as an aside, point out, because I do think it might be helpful, once he filed the complaint, the DOC defendants did file a motion to dismiss and relied on a variety of issues, not just exhaustion, and he did not respond at all. I'm not saying that he automatically loses, but the court could, the district court could, and look at all of them, the district court chose to accept the exhaustion part of it. Well, and didn't the district court disavow the notion that the court was ruling against him because of his failure to respond? Yes, I think they did, because the district court pointed out that an extension provision exists in the policy. He could have gotten one, he probably would have gotten one if he'd asked, and therefore he can't complain if he's subjected to the requirements of the PLRA that he failed to exhaust. I think there's actually a little time left on my clock. Well, on the failure to respond to the motion, Amicus says that should be excused because he didn't receive some kind of notice. How do you respond to that? Well, with all due respect, there's no reason to believe he didn't get the motion itself when it was filed and served on him in the due course of events. It's clear that he did not respond, but we're not saying that his failure to respond means he loses automatically. His failure to respond is quite telling, though, because, as we were talking about earlier, he knows exactly what a motion to dismiss is, and he knows how to respond, and he's done it many times, and to this day he's never said he didn't know he was subjected to that. He decided for whatever strategic reasons he dreamed up on his own that he had let all this time go by and he was going to try to push the case in a different way, but he didn't have that option. And as I said, I think, a moment ago, the defendants made a full-blown motion to dismiss so that his case could be dismissed on more substantive grounds rather than exhaustion, but the district court didn't feel the need to do that because the situation was clear as far as it was concerned. The only, well, I guess, really, I just want to bring us back to the PLRA in general and the reality that this case, which turns on paragraph 61 of Mr. Talley's own very comprehensive complaint, reveals the exhaustion problem essentially on its face because he said he didn't have a writing utensil until February 9th, which suggests that on February 10th he could have asked for time to get the ball rolling again. Why wasn't it improper for the district court to consider the declaration about his failure to grieve since that was extrinsic to the complaint? Did you say why was it improper? Yeah, why was that proper for the district court to consider those documents? Well, the defendants were faced with a lawsuit to which they had to respond and he had said in his complaint that he didn't have a writing implement and didn't exhaust for that reason, which I think brought the exhaustion question right up. And in this situation, it's common for the prison officials to collect the necessary affidavit or support from the DOC to say, we've searched the records and we don't have anything. I don't think they did any more than that. And to put that in in response to a motion to dismiss? Well, I'm sorry, that's what the motion to dismiss itself was based on. Looked, we don't have any record of anything here. There wasn't any proper exhaustion as there must be. I guess my question is, why can the district court consider that on a motion to dismiss, right? He's stuck with the allegations in the complaint. Because he, I guess the only way I can put it, given the particular allegations he made, is he didn't feel he had to exhaust. Yeah. And so if he felt that way, he was wrong. Depending upon what we say. Well, that's true. We'll have to see what happens. I think all of the members of the panel have dealt with Mr. Talley one way or another, including in a case quite similar to this with a non-exhaustion, which we cited in our brief. And I hope that this inspires you to reach a similar conclusion and affirm the judgment in this instance. Thank you very much, Ms. Tesoro. Rebuttal? Ms. Han? May it please the court. I have two main arguments to respond to our friends. The first one is about its face requirement. Yes, I think they made a good point that exhaustion can be dismissed at the 12B6 stage, if and only if it's revealed on the face of the complaint. And actually, it is consistent with this court's holding in Thomas v. Brunage. And in that case, the prisoner said in their complaint that they did file grievances. And I think in this case, in Mr. Talley's case, he was doing the same thing, but just focused on the other side of the coin. He was basically saying that I didn't have to exhaust because it was not available to me. And whether it is a good argument is not relevant on the face of the complaint requirement, because he did plead that. And also, he should not be punished for going beyond the pleading standard. He was just trying to show the court in the best way that he could, that he understood the requirement. And I guess the third point to the first argument I would like to make is, despite that Mr. Talley was an experienced litigant, it's not in front of the record. It's not in the complaint. And even experienced lawyers make mistakes, and we cannot base the fact that he's a very experienced pro se litigant and to go contrary to the Supreme Court ruling and establish a scramble. But he had to know, because, again, the Roman V of his complaint, exhaustion of administrative remedies, and he was saying everything was unavailable until February 9, 2018. Yes. That just openly invites a motion to dismiss to say, okay, after February 9, you didn't do anything. Even if he didn't put this paragraph in the complaint, he also didn't have to. But I would want to point the point that exhaustion can be dismissed only based on the face of the complaint. And we don't reach the matter of whether the complaint is actually true, because at the pleading stage, we must take what he alleged as true. And I would also want to go back to the notice requirement, because I think there might be some confusion. We are not. Even if you've got everything you want, what would your remedy be? I think the remedy would be just consistent with the notice and opportunity requirement. And also I would like to clarify that a notice and opportunity requirement is not that Mr. Talley received a motion to dismiss. It is what Palladino held that before the district court elects to become a fact finder of the exhaustion issue. There must be some form of notice. But it's all procedural. In the end, he didn't exhaust and he didn't ask for it. And he could have asked for an extension to add additional time to exhaust. And he didn't do it. I mean, in the end, can he possibly win? In the end, I think the answer will depend on what facts would be discovered. And we don't know why he didn't file extension. He didn't respond to the motion to dismiss. I mean, he could have said, you know, Harrison and others were retaliating against me if I had done so. He never said anything to that effect. Yeah, he didn't respond to the motion to dismiss, but the district court dismissed this case not on the basis of non-opposition. This case was dismissed with prejudice. And it was dismissed with prejudice before the district court gave the requisite notice and opportunity opportunity. And also to Judge Ambrose's other question, what would the remedy be? And I think it would be, I would envision something quite simple. Just consistent with Palladino, there would be some opportunities for him to submit additional materials. And it could be as limited as another alternative argument on intimidation or whatever he would like to put in to explain further why the remedies were unavailable to him. Or it could also give him another chance to remedy his non-opposition, to fight opposition brief. Well, just to sum up, because I realize my time is up, to sum up, I would just like to say that Mr. Talley should not be punished for going beyond the pleading stage. And this case clearly did not reveal on his face that he fell to exhaust. Thank you very much, Ms. Han. The court is grateful to the Deckert firm for accepting the pro bono appointment. And thank you for your supervision, Mr. Castiglia. Ms. Han, we're very grateful to you for your pro bono assistance to the court. And you have a bright future ahead of you. So I hope this experience was a good one for you. We thank also Ms. Neal and Ms. Tesoro. Ms. Tesoro made, I think, a helpful suggestion when I put her on the spot to answer a question unrelated to her clients regarding the PLRA. So I'm going to ask Ms. Neal and Ms. Han to submit post-argument letters under Rule 28J. If you could tell us what, if anything, the PLRA has to say about the jurisdictional problem that we were discussing earlier. OK, does that give you both sufficient guidance? Yeah. OK, terrific. All right, the court will take the motion.